14-0490, Kirby Lumber & Supply, v. Gary Fenn, K-A-R-E-N. We are ready to proceed to our argument today. Your Honor, as I indicated to you, there's basically two issues here. One is whether or not the decision of the Commission was against the manifesto and the evidence. And the second issue is that here there were two accidents with the same employer but two different insurance carriers. There was an order of reimbursement from one carrier to the other. The Commission's authority was being disputed on that issue. I thought we had an agreement between the two carriers, but my understanding of the agreement is different from travelers' understanding of the agreement. As a result of that misunderstanding, travelers never filed a brief in this matter. And I thought we were here today, I was here today just to discuss the manifest weight issue. Counsel, I believe, is objecting because he never had a chance to brief the matter, thinking that we had a settlement, which now appears to have fallen through. And I have been trying to get in touch with the powers that be in my company to see if we still had, if a revised settlement could be worked out today, which would result in the entire appeal being dismissed. And I'm still waiting to hear on that. I'm Jim Halsak. I'm counsel for our Committee on the Travelers. Before the brief was due, in November, we reached an agreement. I thought it was pretty clear from the discussions we had that we reached an agreement on the entire matter, which is why we filed a brief. I filed up monthly, compared weekly to bi-weekly, for the release. I finally received the release last Thursday. I was surprised when I actually, you know, it was out last Friday. I was surprised when I read it yesterday, and it didn't release us from both the issues. Not just the reimbursement issue, but as well because of the several discussions I had about closing the entire case, finding, trying to find out what was going on with the, if there was an offer made to the petitioner. At one point, I was having bi-weekly follow-ups with Mr. Hoffman or emails. At no such time was there any indication that the entire case, to me, was not settled, or I would have filed a brief back in November or December, you know, January blah, blah, blah, blah, blah. So, when we discussed the case today, my discussion was, well, there won't be a release. The reimbursement part was partially compromised, and I'd like to have the afforded chance to brief the reimbursement issue. Can I ask you a question? Who's paying that? Is the claimant getting money now? No, that's one of the problems. He hasn't been getting the money. Well, then why should we give you a continuous? Pardon me? Why should we give you a continuous? It's the employer's obligation to pay. It is. It is. You can sue your client. It's, right now, there's an obligation from the JPA. We've paid $332,000, even though there's been multiple decisions that we don't owe anymore. So, and the confusion, I think, was rest on AIG's counsel, not mine. Were either of these insurance companies ever made parties to this lawsuit? The carriers, no. No. So, where do the carriers get the jurisdiction to come before us? This is a matter between the claimant and his employer. That's what this matter is about. If you people don't agree, you're going to get sued by your client. You're probably both going to get sued by your client so they can figure out which one of the two of you are going to pay. But the fact of the matter is, this claimant is entitled to be paid. I agree. His cause of action is against his employer. It's not against you. All right. We're both representing the Securities Bureau, aren't we? I'm going to look at the Jacobo case on penalties. I think it makes it pretty clear. So, the bottom line is, you're not prepared to argue with this advocate. Is that the ultimate bottom line? That is one of the ultimate bottom lines. May I be heard? Pardon? May I be heard? Yes, absolutely. My name is Kenneth Newman. I represent the petitioner. And, you know, the case was tried in 2010. No one has ever disputed that he's a permanent total disability that is entitled to the back TTD, that is entitled to the medical expenses. It's simply come down to a manifest rape case as to which carrier pays. When the motion – there was a motion made to continue based on scheduling conflicts and the possibility that a brief might need to be filed, to which I objected. And the objection was sustained. The motion was denied. And just from the petitioner's perspective, this needs to move forward and get resolved. And allowing briefs now at this stage is going to extend it months. There's a fundamental threshold problem that Justice Hoffman alluded to. How does a party, someone who's not a party to a lawsuit, file a brief? We can continue with that. I don't see a basis to allow him to file a brief if he's not a party to the lawsuit. Well, it's a security lumber. Well, you're going to get two briefs from security lumber, one saying he owes it on the day of the accident, on one day, and another one from security lumber saying he doesn't? Yeah, that was it. Does that make sense to you? Well, it does because the new 19B, because the provision in 19B does give the commission authority to decide which period is imposed. Oh, they decided which accident to put or which date to put this on. There's no question they did that. Yeah. Where did they get the authority to order reimbursement? The 19B provision of the Act gives the authority. 19B says what? Gives the authority. To do what? For the commission to order which period is responsible. Well, I'm talking about reimbursement. I think these clearly are arguments best presented for the full court for decision, and the motion to continue was denied. So I think we're ready here for arguments to determine. If we could, your Honor, one alternative, respectfully, I think we had, you know, if we continued until tomorrow morning, it would be likely, you know, today, considering the goofiness of this whole issue. The answer should have an answer and the case might be done. Is that a fair assumption? I would hope my client would have a response as to whether or not they're willing to revise. You don't even know if there's going to be a response. You have no knowledge. I have talked with the adjuster. The adjuster has to go, this is behind his pay grade because of the amount of dollars that's involved. He has to go higher up, and that's what the delay is. But I would hope I'd have something by tomorrow morning. Well, obviously you're entitled to disposition on the merits, but if you don't proceed, would you be willing to waive oral arguments? And we can decide the case on the briefs unless you come in with some kind of a settlement tomorrow. Considering that I'm having a follow-up brief, because in my opinion, the error on Edgie's counsel path, I'd rather not, you know, waive orals if I only have, if I'm not working out here to develop. Well, you don't have to waive orals. If you don't argue today, we're going to waive them for you. If you do this tomorrow, we have orals tomorrow. We don't need to tell you. We'll take a very brief recess. We'll be back in a momentarily. Thank you. I guess I would anyway, but there's no jurisdiction on this side. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. Thank you.   Thank you. Thank you.  Thank you. Thank you. We'll proceed today with the argument. There are two proper parties before us. The very right of the parties have filed a brief on this action. And I believe it is Security, Lumber, and Supply, versus claimant here had just filed a brief, and you may proceed. I believe you have not filed a brief and not reported properly for argument today. May it please the court. And the decision will not be entered in stanter. If something happens, it must be informed of the court. You may proceed. Thank you, Your Honor. There are two, as I've indicated, there are two issues here. Yes, please. I'm sorry. My name is Robert Hoffman. Well, before we even begin, let's, I don't believe, did we call the case here? Yes, we did. Yes. Okay, very good. Counsel, please identify yourself and the party you're representing. My name is Robert Hoffman. I represent security lumber and supply with regard to the accident on October 6, 2004. There are two issues before the court, Your Honors. The first issue is whether or not the decision of the commission is against the manifest way of the evidence. Mr. Langman had two accidents. On December, excuse me, on February 11, 2004, he had an injury to his lower back. He had some treatment and was released without restrictions. But Mr. Langman testified after his release, he continued to have back pain. An additional man was brought on to assist him because he could not do all of his job duties. And he continued to take medications and do exercises. On October 6, 2004, he had a second injury, which Mr. Langman described as being an injury to the upper back between the shoulder blades. He testified that he did not feel that the October 6 accident resulted in any injury to his lower back. And certainly he testified that it did not result in any change in his lower back complaints after that accident. After the first accident in February, he sought immediate treatment. After the accident in October, it was two days before he received treatment. And he was, his treatment for the upper back problems was brief, and then he was released from that issue and instructed to see another doctor with regard to the lower back problems. Over the next, between 2004 and 2010 when this case was tried, the petitioner saw a number of treating physicians for treatment. Only one of those doctors rendered an opinion with regard to causation. That was Dr. Harvey, the doctor who performed surgery on his lower back, who opined that the petitioner's problems related to the February 11, 2004 accident. The petitioner was examined at traveler's request on four occasions by Dr. Slatt between 2005 and 2010. At the conclusion of each of those independent medical examinations, he opined that the petitioner's condition was related to the February 11, 2004 accident. He also did a medical records review during that period and opined that it was related to the February accident. It was not until May of 2010 that Dr. Slatt rendered a report that indicated that he felt that the petitioner's problem was related to the second accident, and his claim was that he, that was when he first became aware of the second accident. This is the only evidence that links the petitioner's injury to the October accident. Let me ask you this. Did the petitioner ever seek any medical treatment between February 2004 and October 2004? It was either late February or early March of 2004 that he had treatment, and then he did not have treatment until October. He didn't have treatment after the February accident, did he? He had brief treatment, as I said. It ended either in February or early March. I'm not sure of the exact date. And then after that, there was no further treatment until this incident in October, right? Correct. Well, doesn't that provide some independent evidence that he didn't have any problems with his hip and his leg? But that's not what he testified to. He testified that he had ongoing back complaints and numbness and tingling in his leg during that period of time. But he sought no treatment? No, but he did not seek treatment. Dr. Delheimer was your witness, wasn't he? Yes. He also opined that it was related to the February accident. Well, yeah, but Delheimer opined that the February accident didn't aggravate the claimant's condition, but rather rendered a previously asymptomatic condition symptomatic. Is that true? Is that what he said? I believe that's what he said. Then he agrees that following February 11th, the claimant received only two weeks of conservative treatment, had no MRI, CT, or EMG testing, and acknowledged that the medical records reflected that the claimant nevertheless showed significant improvements two weeks after February 11th and did not seek further treatment until after the October 6th accident. And Slack puts it all on the October 6th accident in his subsequent opinion, and he says the reason why that happened was nobody told him about the October accident. Your Honor, I think that's part of the problem here. For someone to be hired to render opinions as to what causes a problem and then claim five years later that, oh, they never told me about a second accident, it just defies credibility. Well, you know, I've had this conversation before today. If I were the trier of fact, I may agree with you. But I wasn't the trier of fact the commission was. And the commission gets to decide who they're going to believe. And unless you can make an argument that Slack's opinion should not have been admitted as opposed to merely attacking its weight, then in that particular case, I don't know where we're going here. Well, I guess I respectfully disagree with your analysis here, Your Honor. The test for manifest weight is not whether or not there is no evidence that supports it, but it has to be credible evidence. And for a doctor to take one position for five years and say, oh, they never told me about it. I agree with you. But credibility is their decision, not mine. I may not have believed him. They did. You can't have it both ways. Frequently, attorneys will argue in here all the time that the opinion is only as good as the foundation on which it rests. And I am sure that if you're on the opposite side of the table and the doctor rendered an opinion not knowing about an accident, somebody would be yelling that this opinion is no good. Isn't the goal to get it right? Obviously, if there was an accident in October that he didn't know about, why wouldn't he be allowed to correct his opinion now knowing about the October accident? What's wrong with that? So I guess what you're saying, Your Honor, is that they got the report in 2005 and no one said, what about this other accident? They sent you back again a year later and no one asked them at that point, well, you know, you didn't mention anything about this accident. What about this accident in October? So we have four occasions where they had the petitioner come in to see this gentleman, where the doctor saw this gentleman, and at no time does anyone ask him about this other accident? Well, how would he ask him about an accident he didn't know about? Think about your question. No time has he asked him about this other accident. Your Honor, when independent medical exams are scheduled, someone is providing them with records. And what you're saying here is that someone not only didn't supply them with records the first time, but they didn't supply them with records the second, third, fourth, and fifth time. Counsel, we had one case today where the insurance company never even told the doctor who they hired that there was an accident that day. I mean, this happens all the time. Well, I've never seen this. They don't send them half the records. I've never seen this, and I certainly would not, after the first time, I would have been asking questions. And, you know, to me this defies credibility that someone could hire a doctor, send a patient to that doctor on five different occasions over five or four different occasions in five years and not provide him with information when you're getting subsequent reports that never mention other accidents. That has to be in their mind because... The Commission had an explanation for that, didn't they? They actually answered your question. They said, although Dr. Slarek had records relating to October 2004 accident when he rendered his prior causation opinions, the Commission did not find it unreasonable to believe the doctor did not unilaterally find those records, especially in view of the fact that it was retained by the insurance carrier covering the February 11, 2004 accident. So, yeah, he didn't go looking for it, but the Commission found that to be reasonable. And are we supposed to re-weigh the credibility findings? Well, again, Your Honor, I guess I hate to mention it in my brief, but I was involved in a Rule 23 decision 15 years ago where that's exactly what was done by the court, and I was chastised when I said you couldn't do that. Couldn't do what? That you couldn't look at the evidence in a situation like this and say there's not enough evidence here to support this decision. Counsel, could we get clarification on the second issue in your brief? Yes. In the refi brief, you've indicated that there's a settlement and that that second issue that had been brought up in the original brief has been disposed of and we don't need to consider it. That's now on the table again, is that right? I guess so. Okay, all right. Don't guess it. Your Honor, you waived it. Ah, yes. Well, yes to what? I'm sorry. I'm not waiving the issue. Okay, all right. So can you tell me who is the appellant in this case? The appellant is Security Lumber. Okay. In the caption of the case, the caption of the brief, it's Security Lumber and Supply and then in parentheses Chartas. Now, what does that mean? Why is Chartas in there in the caption? Because of the issue over there was two insurance carriers. Chartas was the carrier at the time of the October 2004 accident and Travelers was the carrier at the time of the February 2004 accident. Right. Has there been any change in the name of Security Lumber and Supply to now be Security Lumber and Supply Chartas? Has there been any intervention in any of the lower proceedings by Chartas or by Travelers? Only in the manner that it's in the pleadings. The only parties in this case are Security Lumber and Supply and Claimant, correct? Yes. And the Workers' Compensation Commission. So what we get to with this second issue that you've raised is a series of proceedings that haven't been engaged in, haven't been initiated by Claimant, but they've been initiated by an insurance company. And I'm trying to figure out how it is that it's been driven by an insurance company as opposed to either of the parties. I think it is being driven by Security Lumber who wants to know which carrier covers this. Well, okay. So then what is your second issue on appeal? The second issue, Your Honor, is that the Commission ordered a reimbursement from one party to another and it's our position that there is no authority in the Act for the Commission to do that. You mean from one carrier? From one carrier to another. Well, because you're still struggling with the party concept. I guess I'm trying to gloss over that, Your Honor. And just to make that clear, you have waived any decision on that issue, right? No. I mean, you raised as an issue that the arbitrator and the Commission did not have authority to order reimbursement. Yes. Well, can I read you something? I guess I don't understand what your question is. In your reply brief, you stated, The appellant wishes to inform the appellate court that a partial settlement has been reached in this matter which has reduced the issues on appeal. The appellant Security Lumber and Supply Charters and the Appalachian Security Lumber and Supply Travelers have negotiated a compromised settlement that has resolved the second issue raised in the appellant's brief, namely, whether the Illinois Workers' Compensation Commission exceeded its statutory authority when it ordered charters to reimburse travelers for TTD and medical benefits that travelers had previously paid. As a result, there is no longer any reason for the appellate court to consider this issue. That's not waiving the issue? Counsel is coming in, for travelers, is coming in saying that negotiation has fallen through. They're not even here. That's got nothing to do with you. If that's not an issue here, I guess I would briefly say... Can I ask a question? Sure. Any insurance carrier, private self-insured, or group workers' compensation pool that is determined to be liable for coverage for the injury in the issue shall reimburse any insurance carrier, private self-insured, or group workers' compensation pool that has paid benefits to or on behalf of the petitioner for the injury. Now, you're suggesting that the commission doesn't have the authority to enforce that? Your Honor, I... I just read to you from 19B. I guess what I would point to, Your Honor, is the commission's decision of Kohler, which is cited in my brief, where they specifically said they didn't have authority to do this. Commission decisions are meaningless to us. You can't even cite them to us. I mean, they don't make law at the commission. No. My question is... I believe that is something that was enacted after this case was tried, but I'm not positive. Oh, I don't think so. Because this book that I'm reading to you was put out, I think, immediately after Mr. Halleck was the chairman. And I stand corrected. I believe Dennis Ruth was the chairman when this thing came out. And that's a long time ago. But I don't know. It occurs to me that if the act says you've got to reimburse, then in that particular case, it would appear to me that the commission has the authority to enforce it. Well, I guess, and I don't understand the Kohler decision, which I know is a commission decision, but that was decided after that, too. It's meaningless. It's irrelevant. You can't cite it. There's no precedential value to a commission decision whatsoever. We have cases that say that. But, I mean, I can understand where it causes some difficulty in understanding it, but, you know, the commission decisions seem to wax and wane depending on who the commissioners are, including who's in the governor's office. I thought we were supposed to be consistent in these rulings. Well, yeah, but they're not. And getting back to the question we left hanging, you originally agreed to waive the second issue based on subsequent developments. Since he doesn't have a brief and isn't arguing, so you're not going to be addressing that issue, correct? Correct. All right. Thank you. We have to decide that issue. I think we are required to decide that issue. I mean, look, it's based on a settlement. The settlement didn't take place. So what do we have evidence of that? These guys show up today and just talk about it. Nobody's filed anything? Well, no, that's not my suggestion. My suggestion is the question of whether the commission has the authority to enter the order that it entered is something we're going to have to address anyway. We can discuss that later. Counsel, I do have one other question for you here. The first issue on appeal is the manifest weight question. Yes. At page 10 of the employer's brief, security lumber and supplies brief, it says the issue here is whether the petitioner's current condition is related to the petitioner's first accident on February 11, 2004. In other words, to his work accident on October 6, 2004. The employer here, that being security lumber and supply, is asking this court to rule the commission's decision to be against the manifest weight of the evidence. And have it hold that the first accident was instead the accident causing the current condition of ill-being? Yes. Okay. And that is what you were directed to do here by the employer? I represent the employer, so this is the decisions that were made. I think that's a good point. You were hired by an insurance carrier to represent the employer. Is that right? Yes. And when we file... To answer that question. Yes, that's correct. Are you not the attorney for the insurance company? I believe can as an ethic say I'm the attorney for the insured. For the insured. How does it benefit the insured? You know, because the insured is on the hook for whatever the commission ordered either way. How does it benefit the insured? Let me finish my question. Which of these dates are the appropriate date of accident? Well, one, when review pleadings were filed in the circuit court, I did go speak to the employer and explain what the issues we intended to raise were. Counsel, I don't think you can be required to say what you talked to your client about, right? I guess what I want to say is that I've had conversations with Security Lumber about these issues. And as to why it concerns Security Lumber, which accident this applies to, is right here. We have two different insurance carriers. If, for instance, and I don't, if the Charterist or AIG is still the carrier for Security Lumber, having a loss removed from their loss experience as far as this insurance carrier is concerned has an economic impact on the insured. So there is a reason why it would want to know, why Security Lumber would want to know which accident is responsible for this. Which is the only arguable issue, some would say, before this court. Properly before this court, given your requirement. I'm concerned about another issue. You have a claimant who got an award in 2010 who hasn't received any payments since 2010. Now, I suppose the larger question becomes, whichever way this case is decided, one of two insurance carriers is going to get stuck with the bill. Who gets stuck with the penalties? There's no penalties awarded. The question is, if you don't pay it, can they go back and get them? I think we've had a legitimate defense here, a reason to raise the issues we've had, which would be the bars, the penalties. The employer had no basis to make an argument that this man was not entitled to his compensation. Two insurance companies had a fight about it, but the employer is the one that's going to get tagged with the penalties. I mean, do you agree it's undisputed that one of the two of you owes the claimant? Yes. I agree with Giacoppo. I mean, Giacoppo very clearly says, I mean, not paying because it's undisputed, not paying money that's owed on an undisputed issue is subject to the penalties, period. You know, so whatever you want to do. Okay. We've been more than generous on time. Thank you, Your Honors. Counsel, you may respond. Good afternoon again, Justices, Counsel. Kenneth Newman on behalf of the Petitioner, and I'll be brief. The sole issue remaining is whether the Commission's decision finding that the Petitioner's current condition is related to the October 2004 accident rather than the February 2004 accident is against the manifest weight of the evidence. Again, I'd point out that, and the panel has in its question by knowing you understand this, that no one's challenging the fact that the Petitioner is permanently disabled and is entitled to these benefits. I would simply say that there's factual evidence in the record that could potentially implicate both accidents as being the cause, and I don't think it can be said as a matter of law that the Commission's decision was against the manifest weight of the evidence. Well, I mean, I suppose the larger question is do you even care? I beg your pardon? Do you even care? As far as who pays? Yeah. I don't care. No, I... I mean, your case is against the employer. Correct. You don't care whether we find whether it's one accident versus the other, because it's undisputed that he was injured at work. That's not an issue here. Correct. So I suppose I get back to my question, and it's kind of trite, but what do you care how it comes out? You probably don't, and, again, you're not going to stand up and argue you don't care. I don't think you made that argument. I think you said that either one condition, I'm sorry we can't play it back, but I don't think you're arguing for one date or the other. Am I correct? And to be perfectly frank, my concern is just getting compensation as quickly as I can get it given the circumstances of this case. Okay. Your position is there's sufficient evidence in the record to support the commission's decision just to expedite it, correct? Correct. Okay. Thank you, counsel. Counsel, you may reply. One quick comment on manifest way, Your Honor. I believe the evidence is, or the rule of the court is that it has to be without substantial foundation, and here the fact that we have no treating physician who links the injury to the October accident, and the only evidence that supports it is an 11th hour opinion by one expert who has repeatedly indicated for five years that it wasn't related to that accident, indicates to me that there is not a substantial foundation for the commission to have found that the October accident was the cause of the low back injuries, which are the cause of the petitioner's problems today. Thank you. Thank you, counsel, all for your arguments and commentary on this matter. It will be taken under advisement. A written disposition shall issue. The court will stand in recess until 9 o'clock tomorrow morning.